## IKE THARPE v. THE STATE.

1. CRIMINAL LAW. *Murder  Charge of court*  The prisoner being on trial
for murder, the trial judge, upon the hypothesis that the prisoner
had attacked the deceased with intent to commit murder in the first
degree, and that at the moment he was jerked away before doing
any injury, a third person, without any concert with him, killed
the deceased, charged the jury as follows: "Should you fail to find
from the proof a conspiracy, but find that the defendant wilfully
and unlawfully engaged the deceased in a fight, and thereupon Eli-

Tharpe v. The State.

jah Tharpe, without concert between himself and the defendant, killed the deceased, and you further find that the defendant assailed the deceased wilfully, deliberately, maliciously and premeditatedly with the intent to kill him, then the defendant would be guilty of murder in the first degree." Held, that the charge was erroneous.

.2. SAME. *Same. Same.* His Honor should have qualified the charge by saying to the jury, that if, at the moment the fatal stroke was given by Elijah Tharpe, the fight between the defendant and the deceased had been terminated by the pulling away of the defendant from the deceased, or if the principal object of Elijah Tharpe was not to assist the defendant, but to carry out a purpose of his own, then the defendant, in the absence of any concert between the two, would not be guilty of murder in the first degree.

FROM HENRY.

Appeal in error from the Circuit Court of Henry county. C. ADEN, J.

HU. C. ANDERSON, S. J. TAYLOR and L. M. THARPE for Tharpe.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The prisoner has appealed in error from a judgment of conviction of the crime of murder in the first degree committed on the body of John Jones.

On the occasion of the killing, the prisoner and the deceased, both colored men, were, with a number of colored people of both sexes, at what the witnesses call a "festival," held in a house which had been rented by Charles Tharpe, but into which he had not yet moved. The prisoner had on that day taken a gun to the house and left it there. After the crowd

had assembled, there was dancing, in which the de-
fendant and others joined.    Liquor could be had by
those who wanted it, but no one seems to have been
visibly intoxicated.    The witnesses say that the de-
fendant was sober.    Not long before the killing the
prisoner, his brother Lije Tharpe, and two associates,
who are named, made a good deal of fuss by loud
talking and cursing.    Lije, in the presence of the
defendant, said that the fuss was about John Jones,
who had charged him with being a thief.    It is also
proved by a witness for the State that an hour or
two before the killing, the defendant told him that
his brother Lije intended to kill Jones that night, and
that he, defendant, intended to be in it.    The wit-
ness told Jones of this conversation, which he seems
to have treated very lightly.    Afterwards, however,
Jones went out of the house, and was preparing to
leave the place.    About this time Lije Tharpe went
into the house and got the gun the defendant had
brought there.    Charles Tharpe tried to take it from
him, and in the struggle twisted off the stock, leav-
ing the barrel in Lije's hands.    During the struggle
the prisoner came up, and seized Charles Tharpe, cut-
ting him in several places with a knife.    After the
struggle, the prisoner started in the direction of Jones,
saying that Jones was the man he wanted to meet.
Jones was then standing quietly talking to a woman.
The prisoner went up to him, caught him by the col-
lar with one hand, and raised over him an open knife
with the other, saying, with an oath, "what have you
got to do with this fuss?"    Jones replied, "nothing,"

to which the prisoner responded, with an oath, "you are a liar." One of the State's witnesses, who was standing near, advanced to the defendant and drew him back by the collar of his vest, he having on no coat. It required, says the witness, no great force to pull him back. Just then, Lije Tharpe came up behind Jones, and struck him two blows over the head with the gun barrel, from the effects of which he died in ten days.

The trial judge, after instructing the jury correctly as to what it takes to constitute a conspiracy, and the effect upon the defendant's guilt of conspiracy or concert between him and his brother, proceeded in his charge as follows: "But should you fail to find from the proof a conspiracy, but find that the defendant wilfully and unlawfully engaged the deceased in a fight, and thereupon Elijah Tharpe, without concert between himself and the defendant, killed the deceased, and you further find that the defendant assailed the deceased wilfully, deliberately, maliciously and premeditatedly with the intent to kill him, then the defendant would be guilty of murder in the first degree, and you should so find." Error is assigned on this part of the charge.

The charge is based upon what was said by this court in *Beets* v. *State,* Meigs, 106. In that case James Beets and George Beets were indicted for murder in the first degree committed on the body of Samuel Rayle. James Beets and Rayle had some angry words, and were about to engage in a fight. George Beets interfered, saying they should not fight,

but that if any fighting was to be done, he would do it; whereupon Rayle struck him, and a fight between them ensued. While the fight was in progress, James Beets returned, and shot Rayle with a pistol, from the effect of which shot he died. The trial judge charged the jury that if George Beets engaged in the fight in self-defense, and while thus fighting, James Beets shot Rayle without the knowledge or consent of George, George would be guilty of no offense. But if George Beets fought willingly, so that he would be guilty of an affray, and while thus fighting, if James Beets shot Rayle, it would be manslaughter in George, although James shot without the knowledge or consent of George. The jury found both defendants guilty of manslaughter. Upon appeal in error this court said, per Green, J.: "It is certain that if George Beets in the fight had himself killed Rayle it would be manslaughter. He was not fighting in self-defense, but was engaged willingly in the combat. It is laid down in Archbold, and also in 1 Hawkins, ch. 31, secs. 35, 56, that if when two are fighting, a third come up and take the part of one of them, and kill the other, this will be manslaughter in the third party, and murder or manslaughter in the person whom he assisted, according as the fight was deliberate and premeditated, or upon a sudden quarrel. The principle is this: if a party be engaged in an unlawful act, and another assist him, and actually perpetrate the mischief, the first party shall be held responsible as though he had been the sole perpetrator himself. If a man is fighting with

another, not intending to kill, but by some unlucky blow death ensues, he is guilty of manslaughter; and why is this? Not because he intended to inflict death, but because he was engaged in an unlawful act, and the blow and the death were consequences of that act, and he must be responsible for it as though he had designed the result. Upon the same principle it is that he is responsible to the same extent, though the fatal blow be struck by another who assisted him without any concert on his part. The assistance is given because he is engaged in an unlawful act; and as he unlawfully creates the occasion for the interference and assistance of the third party, he must answer for the consequences as though he had been the sole actor."

It will be noticed that the intervention in Beets against State, as well as in the case cited from the text books, was while the two original combatants were fighting, and that it was in aid of one of them, the principal motive of the intervener being to assist him: 1 Hawkins, sec. 49, 50. The law would be otherwise if the original combatants had been, or were separated when the intervention occurred, or if the third party intervened for his own purposes. For, on the first point, an act and evil intent must combine to constitute in law a crime: 1 Bish. Cr. Law, sec. 206. No amount of intent alone is sufficient; neither is any amount of act alone; the two must combine: *Id.*, sec. 430. And generally, perhaps always, the act and intent must concur in point of time: *Id.*, sec. 207. On the second point it may be said that a per-

son is responsible for what of wrong flows directly from his corrupt intentions; but not, though intending wrong, for the product of another's independent act: 1 Bish. Cr. Law, sec. 641. It has accordingly been held by this court that if, during an affray between the prisoner on the one side and the deceased and another on the opposing side, the deceased be accidentally killed by some one who was co-operating with him, and by a blow aimed perhaps at the prisoner, the prisoner would not be responsible for the act: *Manier* v. *State*, 6 Baxt., 595. So it has been held that if there be a riot, and an innocent third person is accidentally killed by those suppressing it, the rioters would not be guilty of the homicide: *Commonwealth* v. *Campbell*, 7 Allen, 541. "It would be a monstrous doctrine," says Judge Sneed in 6 Baxt., 600, "to hold that when a party intended to kill, but did not kill, and a party with whom the first was in no complicity, accidentally or recklessly kill the adversary of the first party, that the latter should suffer the consequence of such reckless or casual act."

The charge now under consideration is, in substance, that if the defendant assailed the deceased, and engaged him in a fight with the intent necessary to constitute murder in the first degree, and Elijah Tharpe, without concert with the defendant, killed the deceased, the defendant would be guilty of murder in the first degree. If the law of Beets' case be conceded to be sound, the present charge is inaccurate and misleading in not containing the limitations of the law as expounded in that case. These limitations, as we have

seen, are that the original parties were still fighting,. and that the principal motive of the intervening third party was to assist the defendant. His Honor, the trial judge, should have qualified the charge by saying to the jury, that if, at the moment the fatal stroke was given by Elijah Tharpe, the fight between the defendant and the deceased had been terminated by the pulling away of the defendant from the deceased, or if the principal object of Elijah Tharpe was not to assist the defendant, but to carry out his own purpose, then the defendant, in the absence of any concert between the two, would not be guilty of murder in the first degree.

For this error in the charge, the judgment must be reversed, and the cause remanded for another trial.